UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 3:13-CR-00028-GFVT-REW-1 |
| Plaintiff/Respondent, | ) | |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| TIMOTHY ALEXANDER CONLEY, | ) | **&** |
| | ) | **ORDER** |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon Movant Timothy Alexander Conley's petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [R. 153.] Consistent with local practice, this matter was referred to Magistrate Judge Robert E. Wier, who filed a Recommended Disposition recommending that Conley's motion be denied. [R. 159.]

Under Federal Rule of Civil Procedure 72(b)(2), a petitioner has fourteen days after service to register any objections to the recommended disposition or else waive his rights to appeal. In order to receive *de novo* review by this Court, any objection to the report and recommendation must be specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (citation omitted). A general objection that fails to identify specific factual or legal issues from the report and recommendation, however, is not permitted, since it duplicates the Magistrate's efforts and

wastes judicial economy. *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991).

Defendant Conley filed timely objections to the Recommended Disposition. [R. 163.] Conley's four objections are sufficiently definite to trigger the Court's obligation to conduct a *de novo* review. *See* 28 U.S.C. § 636(b)(1)(c). The Court has satisfied that duty, reviewing the entire record, including the pleadings, the parties' arguments, relevant case law, and statutory authority, as well as applicable procedural rules. For the following reasons, Conley's objections will be **OVERRULED**.

I

Judge Wier's Recommended Disposition accurately sets forth the factual and procedural background of the case. Below, the Court mentions the key facts to frame its discussion and analysis, but, chooses to incorporate Judge Wier's discussion of the record into this Order.

Mr. Timothy Alexander Conley was indicted, along with two co-defendants, on December 5, 2013, for honest services mail fraud in violation of 18 U.S.C. § 1341, theft or bribery concerning programs receiving federal funds in violation of 18 U.S.C. §§ 666(a)(1)(A) & 2, and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). [R. 1.] On August 26, 2014, Conley pled guilty to Count 3, which encompassed a violation of 18 U.S.C. § 1341, honest services mail fraud. [R. 87.] A Presentence Investigation Report ("PSR") was prepared in which Conley's recommended Sentencing Guideline Range was determined to be 70 to 87 months based on a total offense level, subsequent a three-level acceptance of responsibility reduction, of 27 and a criminal history category of I. [R. 134.] The defendant filed no objections to the PSR. [*See id.*] Although the Government moved for an upward departure [R. 117], that motion was denied, and on January 27, 2015, the Court sentenced Mr. Conley to 87 months

imprisonment followed by three years of supervised release. [R. 127.] Conley filed a timely appeal to the Sixth Circuit Court of Appeals, which subsequently dismissed the appeal on June 2, 2016, because Conley's plea agreement contained a waiver of appeal. [R. 152.] Conley did not file a petition for a writ of certiorari with the United States Supreme Court. [R. 159.]

On September 6, 2016, Conley, through counsel, filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. [R. 153.] Conley's motion was referred to Judge Robert E. Wier to review and prepare a Recommended Disposition. Conley based his motion on the overall effect that *McDonnell v. United States*, 136 S. Ct. 2355 (2016), has on his case. [*Id.* at 1.] Conley did not request, and the Magistrate Judge did not hold, an evidentiary hearing on this motion. [R. 159 at 31.] On February 16, 2017, Judge Wier filed a Recommended Disposition calling for Conley's motion to be denied. [*Id.* at 32.] Conley filed objections to Judge Wier's Recommended Disposition pursuant to his rights under 28 U.S.C. § 636 (b)(1).[1] [R. 163.]

## II

The Court finds that Conley raised four objections to Judge Wier's Recommended Disposition that are adequately specific to trigger *de novo* review by this Court. *See* U.S.C. § 636(b)(1)(c); *Mira*, 806 F.2d at 637. Conley objects to the Magistrate's finding that (A) *McDonnell* neither applies to the merits of Conley's case nor renders Conley's conviction void; (B) Conley's plea was entered knowingly, voluntarily, and intelligently; (C) Conley did not receive ineffective assistance of counsel prior to his conviction and sentencing; and (D) Conley

---

[1] Conley filed a Notice of Supplemental Authority [R. 165] more than four months after filing his objections to the Magistrate's Recommended Disposition. In that Notice, Conley cites to *Lee v. United States*, 137 S. Ct. 1958 (2017) and *United States v. Silver*, 864 F.3d 102 (2nd Cir. 2017). The Court acknowledges that *Lee* and *Silver* were pending during the timeframe in which Conley had to file objections to the Recommended Disposition. Because Conley filed timely objections to the Recommended Disposition, and because Conley filed his Notice prior to the filing of this Memorandum Opinion & Order, the Court will address Conley's objections with reference to *Lee* and *Silver* for the purpose of building a complete record.

3

should not receive a reduction based on an "official acts" sentencing enhancement. [R. 163.] While the objections raised initially formed, without much substantive difference, the basis for Conley's § 2255 Motion, the Court nonetheless addresses Conley's objections in turn.

Before addressing Conley's objections, the Court first analyzes the unraised issue of procedural default. Where a movant fails to raise a claim on direct appeal, the movant is procedurally defaulted from seeking § 2255 relief on that claim. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). A claim that could have been raised on direct appeal, but was not, "may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley*, 523 U.S. at 622; *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). In attempting to show cause for default, a defendant cannot rely on futility where bringing his claim on direct appeal would have been premature. *See Bousley*, 523 U.S. at 623 (citing *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982) ("[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'")). "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (citation omitted). In cases where the Government fails to argue default, as is true here, the Government may forfeit the right to defend on default grounds. *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (citing *Trest v. Cain*, 522 U.S. 87 (1997)). Although not required to do so, the Court may, on its own, raise the procedural default question in a habeas context. *Elzy*, 205 F.3d at 886.

In Conley's appeal to the Sixth Circuit, he did not argue the effects *McDonnell* had on his case as *McDonnell* had not yet been decided. *See* Reply Brief, *United States v. Conley*, No. 15-5148 (6th Cir. May 12, 2016), ECF No. 31. Rather, Conley claimed his plea was entered without

4

a full understanding as to the elements underlying honest services mail fraud, that his attorney at the time of his plea did not understand the elements of honest services mail fraud, and that during the plea colloquy there was never any statement made as to Conley's use of the mail in committing the offense of conviction. *Id.* at 3-5. While Conley's § 2255 Motion makes neither an argument of cause and actual prejudice, nor an assertion of actual innocence, his Objections to the Magistrate's Recommended Disposition does raise the question of innocence. [R. 163 at 9.] Given the unique posture of the case, the procedural default doctrine raises interesting concerns. However, the Court, like the Magistrate Judge, declines to *sua sponte* opine on the procedural default issue and, instead, addresses the merits of Mr. Conley's objections.

## A

Mr. Conley first objects to Judge Wier's determination that *McDonnell* neither applies to the merits of Conley's case nor renders Conley's conviction void. [R. 163 at 3.] At the heart of Conley's § 2255 Motion, and his subsequent Objections to the Magistrate's Recommended Disposition, is the definition of "official acts" as that term relates to honest services fraud statutes. Although "official acts" has a statutory definition,[2] the *McDonnell* Court clarified that definition as follows:

> [A]n "official act" is a decision or action on a "question, matter, cause, suit, proceeding, or controversy." The "question, matter, cause, suit, proceeding, or controversy" must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee. It must also be something specific and focused that is "pending" or "may by law be brought" before a public official. To qualify as an "official act," the public official must make a decision or take an action on that "question, matter, cause, suit, proceeding, or controversy," or agree to do so. That decision or action may include using his official position to exert pressure on another official to perform an "official act," or to advise another official, knowing or intending that such advice will form the basis for an "official act" by another

---

[2] 18 U.S.C. § 201(a)(3) defines an "official act" as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit."

5

> official. Setting up a meeting, talking to another official, or organizing an event (or agreeing to do so) – without more – does not fit that definition of "official act."

136 S. Ct. at 2371-72. Thus, there are two requirements for an official act: (1) "the Government must identify a question, matter, cause, suit, proceeding, or controversy that may at any time be pending or may by law be brought before a public official;" and (2) "the Government must prove that the public official made a decision or took an action 'on' that question, matter, cause, suit, proceeding or controversy, or agreed to do so." *McDonnell*, 136 S. Ct. at 2368; *see also* 18 U.S.C. § 201(a)(3). The *McDonnell* Court went to great lengths to provide substantive meaning to the statutory language. As to the first requirement, the Court concluded that § 201(a)(3) requires a "focused and concrete" question, matter, cause, suit, proceeding, or controversy "involve[ing] a formal exercise of governmental power that is similar in nature to a lawsuit, administrative determination, or hearing." *Id.* at 2370. Regarding the second requirement, the Court determined that § 201(a)(3) requires "that the public official must make a decision or take an action *on* that question or matter, or agree to do so." *Id.* (emphasis in original). In satisfying the second requirement, it is enough that "a public official uses his official position to provide advice to another official, knowing or intending that such advice will form the basis for an 'official act' by another official. . . ." *Id.*

Conley's first objection is, thus, bifurcated. He initially argues that the Government failed to identify a question, matter, cause, suit, proceeding, or controversy that may at anytime be pending or may by law be brought before any public official. [R. 163 at 4.] Conley asserts that "modifying a bid is not a question, matter, cause, suit, proceeding, or controversy," and that "there was no question, matter, cause, suit, proceeding or controversy pending before Conley." [*Id.*] Next, Conley argues he never "made a decision or took an action *on* one of the questions,

6

matters, causes, suits, proceedings, or controversies." [R. 163 at 6.] His theory is that "non-sanctioned, or illegal conduct cannot be an official act under 18 U.S.C. § 201." [*Id.*]

1

Mr. Conley contends the Government failed to meet *McDonnell*'s first prong because it never identified a question, matter, cause, suit, proceeding, or controversy that may at anytime be pending or may by law be brought before any public official. [R. 163 at 4.] At the time the offense was committed, Conley was the Morgan County Judge Executive, and, as such, also a member of the Morgan County Fiscal Court. *See* [R. 163 at 5]; KRS § 67.040. One responsibility of the Fiscal Court is to oversee the solicitation of bids and the awarding of contracts for certain public construction projects. *See* [R.159 at 9-10]; KRS §178.140. The gist of Conley's argument is that his bid-rigging conduct does not qualify as a question, matter, cause, suit, proceeding or controversy because that conduct occurred prior to the bids being submitted to the Fiscal Court for awarding of the contracts. [R. 163 at 4.] Although Conley acknowledges that "[t]he only question that was arguably pending in front of any public official or body was the question of what company would be awarded contracts . . .," he argues such a question was pending not before him but before the Morgan County Fiscal Court. [*Id.*]

In satisfaction of *McDonnell*'s first prong, the United States identified a focused and concrete question, matter, cause, suit, proceeding, or controversy that is similar in nature to an administrative determination or hearing. The Government identified as questions, matters, causes, suits, proceedings, or controversies "the bidding on the public project," "[t]he bidding process for bridge construction contracts," and "[t]he selection of the winning bidder for bridge projects." [R. 159 at 9-10.] Additionally, Conley's indictment and plea agreement also outline certain questions, matters, causes, suits, proceedings, or controversies. The indictment identified

7

"the formal process for hiring construction contractors" for Morgan County projects and described the bidding process used to award such contracts. [R. 1.] The plea agreement described the bidding process used by Morgan County in awarding certain bridge construction contracts in 2013. [R. 124 at 2.] Conley, in his plea agreement, admitted to rigging certain bids and submitting the rigged bids under false pretenses to the Morgan County Fiscal Court. [*Id.*] The process by which certain public construction contracts were awarded in Morgan County in 2013 constituted a "question, matter, cause, suit, proceeding, or controversy" that may at any time be pending or may by law be brought before a public official. The bidding process and the awarding of the contract was at a time pending before, and by law brought before, the Morgan County Judge Executive and the Morgan County Fiscal Court, which had the final approval authority to award such contracts. Thus, the Government satisfied the first prong of the *McDonnell* test.

### 2

Mr. Conley next focuses on the second prong of the *McDonnell* test arguing he never made a decision or took an action *on* any question, matter, cause, suit, proceeding, or controversy. [R. 163 at 6.] He contends that "non-sanctioned, or illegal conduct cannot be an official act under 18 U.S.C. § 201." [*Id.*] His dispute concentrates heavily on his fraudulent activity of altering a contractor's bid, and asserts that such fraudulent conduct, "by virtue of its fraudulence, cannot ever be performed in an official capacity." [*Id.*] For support, Conley looks to *McDonnell*'s finding that certain acts, "absent an ulterior motive, [are] perfectly acceptable function[s] of Government." [*Id.*] Conley also asserts he neither "used his official position to exert pressure on *another* official to perform an 'official act,'" nor "provide[d] advice or information forming a decisional basis for other officials to award construction projects." [*Id.*]

Conley's admitted conduct satisfies the second prong of the *McDonnell* test as he clearly made a decision or took an action *on* the "question, matter, cause, suit, proceeding, or controversy." Conley's focus on the rigging of bids as an official act is misplaced. Instead, the official act here is the bidding process and awarding of certain public construction contracts by the Fiscal Court, to whom Conley submitted information that formed the basis for the Fiscal Court's decisions. These activities are generally acceptable governmental functions; however, Conley's ulterior motive of receiving kickbacks from certain contractors who were awarded contracts removes the activity from the category of generally acceptable acts. To be certain, Governor McDonnell and at least one other district court have acknowledged that the awarding of a governmental contract satisfies the pre- and post-*McDonnell* definitions of an official act. *See McDonnell*, 136 S. Ct. at 2365; *United States v. Pomrenke*, 198 F. Supp. 3d 648, 701 (W.D. Va. 2016). As *McDonnell* noted, it is enough that "a public official uses his official position to provide advice to another official, knowing or intending that such advice will form the basis for an 'official act' by another official. . . ." 136 S. Ct. at 2370. Conley admitted to selecting and submitting bids to the Morgan County Fiscal Court in order to have certain contracts awarded to PBTHNOJJ Construction, from whom Conley received monetary kickbacks. [R. 124 at 2.] Conley provided the Fiscal Court with the information it needed in order to award those construction contracts. [R. 124 at 2.]

As Judge Executive, Conley was charged with selecting the lowest bidder for construction contracts and presenting those selections to the Fiscal Court for approval and contract award. [*See* R. 159 at 10; R. 124 at 2; R. 1 at 1-2.] For certain projects, Conley "selected PBTHNOJJ Construction as the lowest bidder and later presented his selection for approval by the Morgan County Fiscal Court." [R. 159 at 10.] On at least one of those projects,

9

Conley rigged PBTHNOJJ's bid to make it appear to be the lowest submitted bid. [*Id.*] Because Conley knew he would receive monetary kickbacks if PBTHNOJJ Construction was awarded the contracts, he provided the information to the Fiscal Court knowing or intending that such advice would form the basis for the Fiscal Court's official act of awarding the contracts to PBTHNOJJ Construction. [R. 124 at 2.] Conley avers that the Fiscal Court was "not required to always select the bids proposed." [R. 163 at 7]; *see also* KRS 178.140. While the Fiscal Court was free to reject all bids, if it opted to award a contract, it was obligated to award the contract to the lowest bidder meeting certain other statutory requirements. *See* KRS 178.140(2) ("The contract shall be awarded to the lowest and best bidder, who shall furnish satisfactory security in an amount equal to the amount of the contract in question, to be approved by the county judge/executive of the county.").

Even if *McDonnell* applies to the merits of Conley's case, habeas relief is not warranted under this objection because the two-prong *McDonnell* test regarding official acts has been met.[3] First, the Government identified the process by which certain public construction contracts were awarded in Morgan County as a question, matter, cause, suit, proceeding, or controversy that may at any time be pending or may by law be brought before a public official, to wit, the Morgan County Judge Executive and/or the Morgan County Fiscal Court. Second, Conley, as Morgan County Judge Executive, used his official position to provide advice and information, albeit under false pretenses, to the Morgan County Fiscal Court knowing or intending that such advice would form the basis for the Morgan County Fiscal Court's decision to award certain contracts to

---

[3] In his Notice of Supplemental Authority, Conley cites to *United States v. Silver*, 864 F.3d 102 (2d Cir. 2017), for the assertion that an official act cannot encompass "*any action* taken or to be taken under color of official authority," as it is overbroad and criminalizes "conduct which is not, under *McDonnell*, criminal." [R. 165 at 3.] Because this Memorandum Opinion and Order narrows in on the conduct satisfying a post-*McDonnell* definition of official act, the Court need not address the merits of *Silver* in relation to Conley's § 2255 claims.

10

PBTHNOJJ Construction, from whom Conley received monetary kickbacks. For these reasons, the Court denies § 2255 relief on these grounds.

## B

In his second objection, Mr. Conley urges the Court to vacate his conviction because his guilty plea was not entered knowingly, voluntarily, and intelligently. [R. 163 at 8.] The basis of this objection is that his understanding of the law regarding honest services mail fraud was not in line with *McDonnell*'s subsequent clarification of "official acts," which, when applied to Conley's conduct, exonerates him of honest services mail fraud. [*Id.*] Conley argues that because the term "official act" has a specific definition as to an element of honest services mail fraud, and because his understanding of that term was different than the *McDonnell* definition, his plea was involuntary and unintelligent. [*Id.* at 8-9.]

A plea of guilty is valid only if, under the totality of the circumstances, the plea is "entered knowingly, voluntarily, and intelligently by the defendant." *Brady v. United States*, 397 U.S. 742, 748-49 (1970); *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005). Substantively speaking, "a guilty plea is involuntary where the defendant lacks knowledge of one of the elements required for conviction." *In re Hanserd*, 123 F.3d 922, 926 (6th Cir. 1997) (citing *Henderson v. Morgan*, 426 U.S. 637 (1976)). However, as Judge Wier astutely noted, a subsequent legal clarification as to an element of the crime does not, without more, render an otherwise intelligent guilty plea involuntary or invalid. [R. 159 at 23]; *see also United States v. Riascos-Suarez*, 73 F.3d 616, 622-24 (6th Cir.), *cert. denied*, 519 U.S. 848 (1996), *superseded by statute*, An Act to Throttle Criminal Use of Guns, Pub. L. No. 105-386, 112 Stat. 3469, *as recognized in United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001). The subsequent change must be one of such significance that it yields a defendant who pled guilty to conduct that

was not a crime. *Wausaush v. United States*, 380 F.3d 251, 258 (6th Cir. 2004). Additionally, a guilty plea is invalid and unintelligent where "neither [the defendant], nor his counsel, nor the court correctly understood the essential elements of the crime with which [the defendant] was charged." *Id.* at 258 (quoting *Bousley*, 523 U.S. at 618).

Conley rests his objection on the *McDonnell* clarification of an "official act," and argues that, regardless of whether his conduct was criminal, he could not have entered a plea knowingly, voluntarily, and intelligently because he did not understand all of the elements of honest services mail fraud. [R.163 at 8.] During Conley's Rule 11 plea colloquy, the Government articulated the elements of honest services mail fraud as they existed at the time. [R. 136 at 26-27.] When the Court inquired of Mr. Conley whether he thought the Government could prove those elements at a trial, Conley answered in the affirmative. [*Id.* at 27.] The Court then directed Conley's attention to the more detailed facts outlined in the negotiated plea agreement [R. 124 at 2-3], and asked whether those facts were true. [R. 136 at 27.] After consulting with his attorney, Conley again answered in the affirmative. [*Id.*] While it is true that during the Rule 11 colloquy, Conley himself did not articulate with great clarity his conduct in relation to the elements of the charged offense, the Court was satisfied that Conley was "competent and capable of entering an informed plea." [*Id.* at 33.]

The facts to which Conley admitted, as articulated on the record and outlined in his plea agreement, continue to satisfy the elements of honest services mail fraud, even post-*McDonnell*. The *McDonnell* clarification does not take Conley's conduct out of the reach of the honest services mail fraud statute. As stated in the Recommended Disposition, "[a]n elected official taking kickbacks for doctoring bids and shepherding false bids through the procurement process presents conduct not clarified and not in need of clarification by *McDonnell*." [R. 159 at 26.]

12

Part of that procurement process, as admitted in the plea agreement and plea colloquy, certainly involved submitting, via mail, requests for state funding from the Kentucky Transportation Cabinet. [R. 124 at 3.] Neither the defendant, nor the attorneys, nor the Court were mistaken as to the elements of honest services mail fraud at the time Conley entered his plea, and Conley's criminal conduct was not made innocent by the *McDonnell* clarification. As such, Conley's request for § 2255 relief on this ground is denied.

C

Next, Mr. Conley objects to Judge Wier's determination that defense counsel was not ineffective for failing to advise on *McDonnell* leading up to and during Conley's plea and sentencing. [R. 163 at 9.] Conley argues that his attorney did not properly inform him of the elements the Government would have to prove if Conley went to trial. [*Id.* at 10.] Although Conley stated his satisfaction with counsel at his sentencing, the subsequent holding in *McDonnell* rendered that satisfaction void because *McDonnell* clarified an element of Conley's count of conviction, that being the definition of an "official act," on which Conley was otherwise misinformed. [*Id.*] Conley claims that because Governor McDonnell's trial was pending at the time of Conley's plea, Conley's attorney should have advised him that an area of law pertinent to the *McDonnell* case—and, as Conley argues, his own case—was unsettled. [*See id.*] Conley further contends the hesitancy exhibited in his plea colloquy provides evidence as to how he was prejudiced by his counsel's ineffective assistance. [*See* R. 165 at 2-3.]

In order to prove ineffective assistance of counsel, Conley must demonstrate: (1) counsel's performance was deficient; and (2) he was prejudiced by the deficient assistance so as to render his trial unfair. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Campbell v. Bradshaw*, 674 F.3d 578, 586 (6th Cir. 2012). For Conley to establish *Strickland* prejudice in the

13

context of his guilty plea, he "must show the outcome of the plea process would have been different with competent advice." *See Lafler v. Cooper*, 566 U.S. 156, 163 (2012). A defendant may show prejudice "by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). However, as several Sixth Circuit cases have noted, failure to anticipate or predict a future Supreme Court decision or holding does not, without more, satisfy the *Strickland* analysis. *See Thompson v. Warden*, 598 F.3d 281, 288 (6th Cir. 2010); *Nichols v. United States*, 563 F.3d 240, 253 (6th Cir. 2009) (*en banc*); *United States v. Burgess*, 142 F. App'x 232, 240 (6th Cir. 2005).

As Judge Wier noted in his Recommended Disposition, Conley failed to satisfy *Strickland*'s two-prong test for ineffective assistance of counsel; Conley neither demonstrated that his counsel was deficient, nor established that he suffered prejudice as a result of his deficient counsel. [R. 159 at 28-30.] Conley acknowledges that McDonnell's case was proceeding through trial at the time Conley entered his plea, and that Conley's pretrial counsel was "not expected to be a fortune-teller." [R. 163 at 10.] However, Conley claims his attorney should have had "knowledge of significant cases that [were] pending," and "[a]t a minimum . . . should have advised him that this area of the law was unsettled." [*Id.*] Governor McDonnell had not yet been sentenced when Conley pled guilty and the undersigned sentenced Conley.[4] Thus, Conley could not have relied on *McDonnell* in any proceeding leading up to his sentencing. Because *McDonnell* had not been decided at the time Conley was sentenced, Conley's objection

---

[4] More precisely, Conley was indicted in December 2013. He plead guilty in August 2014 and was sentenced in January 2015. Governor Robert McDonnell was indicted in January 2014. *See* Indictment, *United States v. McDonnell*, No. 14-12 (E.D. Va. Jan. 21, 2014), ECF No. 1. Gov. McDonnell's case resulted in a jury verdict in September 2014, and McDonnell, like Conley, was sentenced in January 2015. *See* Jury Verdict, *United States v. McDonnell*, No. 14-12 (E.D Va. Sept. 4, 2014), ECF No. 495; Judgment, *United States v. McDonnell*, No. 14-12 (E.D. Va. Jan. 6, 2015), ECF No. 624.

requires that his pretrial counsel predict not only the outcome of McDonnell's criminal trial, but also the result of any and all subsequent appellate proceedings. Following this Circuit's precedent, the effectiveness of Conley's pretrial counsel will not be adjudged for failing to predict or anticipate a subsequent development in the law. Thus, Conley fails to show his trial counsel was deficient.

Conley attempts to establish prejudice and show a potential different outcome by relying on *Lee v. United States*, 137 S. Ct. 1958 (2017). Conley's states that "in light of the Supreme Court's subsequent opinion in *McDonnell*, it is clear that Conley's counsel did not correctly advise him of what the Government had to prove to attain a conviction at trial." [R. 163 at 10.] Conley argues that his plea and sentencing colloquies provide ample proof of prejudice in that he was hesitant to enter his guilty plea, and, at sentencing, he felt like "a volleyball in a world of two teams that wants to win." [R. 165 at 2-3.] Conversely, in *Lee,* trial counsel repeatedly and incorrectly advised the defendant that pleading guilty would not result in deportation. *Lee*, 137 S. Ct. at 1963. Lee provided "substantial and uncontroverted evidence" that "deportation was the determinative issue in . . . whether to accept the plea," and that he would not have pled guilty had he known that deportation was a consequence of such a plea. *Id.* at 1963, 1968. The Court noted that "[d]eportation is always 'a particularly severe penalty.'" *Id.* at 1968 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010)). The Court concluded that Lee showed by a "reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 1969 (quoting *Hill*, 474 U.S. at 59).

Conley's arguments fall short of the "substantial and uncontroverted evidence" provided in *Lee* and the "reasonable probability" standard established in *Hill*. Other than merely claiming prejudice, Conley fails to concretely establish that an area of law subsequently decided in

15

*McDonnell* was either determinative in his case or would result in a particularly severe penalty to him. *See Lee*, 137 S. Ct. at 1963, 1968. Instead, Conley asserts only that "he saw no other option" than to plead guilty, and that "had he truly understood the nature of the charges against him he would have proceeded to trial." [R. 165 at 3.] Conley's claims fail to show a "reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Hill*, 474 U.S. at 59. As such, Conley does not establish that "the outcome of [his] plea process would have been different with competent advice." *See Lafler*, 566 U.S. at 163.

Because Conley neither establishes that his defense counsel was deficient, nor shows that he was so prejudiced by deficient representation as to render his trial unfair, the Court overrules this objection and denies habeas relief on the claim of ineffective assistance of counsel.

**D**

Finally, Mr. Conley calls for the Court to reduce his sentence because the "official acts" sentencing enhancement was improperly applied in his case. [R. 163 at 11.] In support of this argument, Conley states, "[n]ow that *McDonnell* has limited the scope of actions which constitute 'official acts,' Conley no longer qualifies" for the four-level official acts enhancement.[5] [*Id.*]

As noted by Judge Wier, Conley neither specifies which Guideline allows for an official acts enhancement, nor establishes where in the record such an enhancement was applied to his sentencing guideline calculation. [R. 159 at 30, n.20.] The Court has reviewed Conley's

---

[5] This argument is verbatim the argument articulated by Conley in his initial § 2255 Motion. [R.153-1 at 18.] In raising the objection to the Magistrate's Recommended Disposition, Conley provides no additional substantive support for his argument. However, the Court addresses this objection in order to build a thorough record.

Presentence Investigation Report.[6] [R. 134]. Conley correctly states his total offense level was calculated to be 27; however, he incorrectly claims a four-level official acts enhancement was part of that calculation. [R. 163 at 11.] The only four-level enhancement applied to his guideline calculation is under U.S.S.G. § 2C1.1(b)(3) because the offense involved an elected public official. While it is true, based on the *Background Commentary* to § 2C1.1, a criminal defendant may receive a four-level enhancement under § 2C1.1(b)(3) where a payment is made "for the purpose of influencing an official act by certain officials," that is not the reason for the enhancement in Conley's case. Conley, as Morgan County Judge Executive, was an elected public official. As such, Conley received the four-level enhancement under the plain language of § 2C1.1(b)(3) because his offense involved an elected public official. The Court therefore denies § 2255 relief on this ground.

## III

In conclusion, after reviewing *de novo* the entire record, as well as the relevant case law and statutory authority, the Court agrees with Judge Wier's analysis of Conley's claims. The Court also denies a certificate of appealability pursuant to 28 U.S.C. § 2253(c) as to each issue asserted. Under Rule 11 of the Federal Rules Governing § 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . ." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As set forth by the United States Supreme Court, this standard requires the petitioner to "demonstrate that

---

[6] The 2014 Guidelines Manual was properly used in determining Conley's sentencing guideline range. Pursuant to U.S.S.G. § 1B1.11, the Guideline Manual in effect at the time a defendant is sentenced is to be used in determining the applicable sentencing guideline range. However, if the use of that Manual would offend ex post facto principles, the Manual in effect at the time the crime of conviction was committed should be used. The Court has reviewed the 2014 Guideline Manual, the Manual in effect at the time of Conley's sentencing, and determined that Manual did not violate the ex post facto clause. Conley's offense level was properly calculated under U.S.S.G. § 2C1.1 due to his conviction under 18 U.S.C. § 1341.

17

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Under this standard, the Court believes that this Order, which adopts and incorporates by reference the Magistrate Judge's Recommendation, is not debatable enough to issue a certificate of appealability. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant/Movant Conley's Objections to the Recommended Disposition [**R. 163**] are **OVERRULED**;

2. The Magistrate Judge's Recommended Disposition [**R. 159**] is **ADOPTED** as and for the opinion of this Court;

3. The Defendant's § 2255 Petition [**R. 153**] is **DISMISSED WITH PREJUDICE**;

4. A Certificate of Appealability is **DENIED** as to all issues raised by the Defendant; and

5. **JUDGMENT** in favor of the Respondent will be entered contemporaneously herewith.

This the 30th day of November, 2017.

Gregory F. Van Tatenhove
United States District Judge